# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# AT KANSAS CITY

| | |
|---|---|
| DEPLOYED RESOURCES, LLC,  *Plaintiff*,  vs.  DATA SYSTEMS INTERNATIONAL, INC.; BRENT DIBARTOLO; BENJAMIN CULLINANE; AND MARK BALDWIN;  *Defendants*. | Case No. 4:20-cv-00607-HFS |

## DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Statement of Facts ................................................................................................................ 1

Legal Standard ..................................................................................................................... 4

Argument ............................................................................................................................. 5

I.  Because the Alleged Misrepresentations in Plaintiff's Fraud Claims Relate
    to the Subject Matter of the Contracts, They Fail to State a Claim. ........................... 5

    A.  The Subject Matter of the Alleged Representations Was Incorporated
        into the Parties' Contracts. .............................................................................. 8

    B.  Plaintiff Did Not Plead Extra-contractual Damages. ................................... 10

II. Plaintiff's Misrepresentation Allegations Are Precluded by the Express Terms of the
    Parties' Agreement ..................................................................................................... 11

Conclusion ......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AKA Distributing Corporation v. Whirlpool Corporation*,
    137 F.3d 1083, 1087 (8th Cir. 1998) ....................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................4, 5

*Bamber v. Prime Healthcare Kansas City - Physician's Servs., LLC*,
    No. 17-CV-00229-W-HFS, 2018 WL 6582383 (W.D. Mo. Dec. 12, 2018) ...........................11

*Bank of Kirksville v. Small*,
    742 S.W.2d 127 (Mo. banc. 1987)..........................................................................................5

*Brands, Inc. v. Crown Valley Winery, Inc.*,
    No. 1:19-CV-134-SNLJ, 2020 WL 3447738 (E.D. Mo. June 24, 2020)................................10

*Compass Bank v. Eager Road Associates, LLC*,
    922 F. Supp. 2d 818 (E.D. Mo. 2013)..........................................................................6, 7, 10

*Crowell v. Campbell Soup Co.*,
    264 F.3d 756 (8th Cir. 2001) ................................................................................................12

*Degirmenci v. Sapphire-Fort Lauderdale, LLLP*,
    693 F. Supp. 2d 1325 (S.D. Fla. 2010) .................................................................................12

*Ebert v. Wells Fargo Bank, N.A.*,
    No. A-13-CV-638 LY, 2014 WL 12478011 (W.D. Tex. Mar. 25, 2014) ...............................12

*Englert v. Alibaba.com Hong Kong Ltd.*,
    No. 4:11CV1560 RWS, 2012 WL 1468472 (E.D. Mo. Apr. 27, 2012) .................................11

*Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*,
    74 F. Supp. 3d 1026, 1029 (W.D. Mo. 2015) .........................................................................6

*Gasket Eng'g Co., Inc. v. Discover Prop. & Cas. Ins. Co.*,
    No. 11-1173-CV-W-HFS, 2012 WL 13027945 (W.D. Mo. Sept. 20, 2012) ...........................5

*HSBC Realty Credit Corp. (USA) v. O'Neill*,
    745 F.3d 564 (1st Cir. 2014).................................................................................................12

*Inspired Pharma Sols., LLC v. 5mRx LLC*,
    No. 4:17CV1621 SNLJ, 2018 WL 659205 (E.D. Mo. Feb. 1, 2018) ......................................7

*Liberty Mut. Ins. Co. v. Harvey Gerstman Assocs., Inc.*,
   No. CV 11-4825 SJF ETB, 2012 WL 5289606 (E.D.N.Y. Sept. 13, 2012) ............................ 12

*Loudermilk v. Aventis Pharm.*,
   No. 05-421-CV-W-GAF, 2006 WL 8438196 (W.D. Mo. June 26, 2006) ................................ 2

*Mark Twain Kansas City Bank v. Jackson, Brouillette, Pohl & Kirley, P.C.*,
   912 S.W.2d 536 (Mo. App. 1995) ............................................................................. 11

*O'Neal v. Stifel, Nicolaus & Co., Inc.*,
   996 S.W.2d 700 (Mo. App. E.D. 1999) ......................................................................... 6

*Smith v. Argent Mortg. Co.*,
   No. 09-0956-CV-W-HFS, 2010 WL 2301191 (W.D. Mo. June 7, 2010) ................................ 5

*State ex rel. William Ranni Associates, Inc. v. Hartenbach*,
   742 S.W.2d 134 (Mo. banc 1987) ............................................................................ 5, 6

*Stein v. Stein Egg & Poultry Co.*,
   606 S.W.2d 203 (Mo. App. 1980) ............................................................................. 11

*Titan Const. Co. v. Mark Twain Kansas City Bank*,
   887 S.W.2d 454 (Mo. App. W.D. 1994) ..................................................................... 5, 6

*Tuttle v. Muenks*,
   21 S.W.3d 6 (Mo. App. W.D. 2000) ........................................................................... 11

*Twombly*, 550 U.S. at 555-57 ........................................................................................ 4, 5

*Villalobos v. Atlanta Motorsports Sales, LLC*,
   844 S.E.2d 212 (Ga. App. 2020) ............................................................................... 12

*Villines v. Gen. Motors Corp.*,
   324 F.3d 948 (8th Cir. 2003) ............................................................................... 11, 12

*Warren Supply Co. v. Lyle's Plumbing, L.L.C.*,
   14 S.W.3d 816 (Mo. App. W.D. 2002) ...................................................................... 11

*Ziglin v. Players MH, L.P.*,
   36 S.W.3d 786 (Mo. App. 2001) .............................................................................. 11

## INTRODUCTION

After two attempts to plead its claims, Plaintiff still has not provided the Court copies of the contracts described in the Complaint. Plaintiff scarcely mentions the contracts because those documents dispose of Plaintiff's misrepresentation claims. Plaintiff complains DSI defrauded it with promises that its work would achieve Plaintiff's "wish list" of intended results. In reality, the parties' contracts specifically state <u>Plaintiff</u> was responsible for "selection of the [software] to achieve customer's intended results." And those contracts do not promise vague "custom" and "standard" products alleged by Plaintiff – they outline in exacting detail the specific services and deliverables DSI agreed to provide and did provide. Plaintiff simply cannot convert a garden-variety contract dispute into a fraud lawsuit.

Moreover, although Plaintiff uses the words "fraudulent inducement," it has not in fact pleaded such a cause of action. All of the statements it relies on as "inducements" are in fact alleged promises about the content of the agreements themselves (*i.e.* what those agreements would say or accomplish). As shown below, Missouri law does not allow a Plaintiff to claim ignorance of the contract it signed and argue it intended to sign something else, something containing promises explicitly disclaimed by what it did sign. That is all Plaintiff has alleged here.

The Court should consider the contracts and rule that the Complaint fails to state a claim for relief under any of the tort theories alleged.

## STATEMENT OF FACTS

Plaintiff's Complaint contains false allegations, offering up excerpts from written communications that distort their meaning, and relating conversations that did not occur. For purposes of a motion to dismiss, the Court nevertheless should assume the truth of all well-pleaded facts in the Complaint. Even if treated as true, Plaintiff's allegations fail to state a claim in tort.

1

DSI is a Missouri-based company that creates applications and software for the digital economy. (*See* First Amended Complaint ["FAC"] ¶¶ 2, 21). Mr. DiBartolo, Mr. Cullinane, and Mr. Baldwin are DSI employees. *Id.*, ¶¶ 3-5. Plaintiff is a sophisticated, "industry leading" company with operations throughout the United States. *Id.*, ¶¶ 10-11. In August 2018, Plaintiff began discussions with DSI about developing an inventory tracking application. *Id.*, ¶ 18. Within a few days, the parties entered into a Software License, Services, and Maintenance Agreement (the "Agreement," attached as Ex. A)[1] and a first Statement of Work ("Statement of Work 1," attached as Ex. B). *Id.*, ¶¶ 25, 32, 37. Statement of Work 1 incorporated by reference the terms of the Agreement. *Id.*, ¶ 56. Under this agreement, DSI would work with Plaintiff to deliver a "DSI Licensed Product" with its particular functions and attributes set forth in highly detailed specifications. *See* Ex. B, at 6-7 and addenda.

Plaintiff claims that, just before the parties entered into this first agreement, Mr. DiBartolo told Plaintiff that the final product delivered under Statement of Work 1 would meet Deployed's "wish list" of business needs. FAC, ¶ 27. Statement of Work 1 sets forth in detail the services DSI agreed to provide in order to implement Plaintiff's installation of a licensed software product, licensed under the Agreement. The Agreement, in turn, provides that any controversy between the parties related to the agreement shall be resolved in Missouri courts, under Missouri law. Ex. A., Article XI, ¶ 2. The Agreement is "a licensing and services agreement and not a sale of goods," with the "services" referring to "[t]he professional services, including without limitation, consulting, implementation, configuration, or installation services related to the Software." *Id.* Article XI, ¶ 1; Article 1, "Services."

---

[1] "Although a Court is generally prohibited from considering matters outside the pleadings in ruling on a motion to dismiss, a Court may consider materials that are necessarily embraced by the pleadings," such as agreements referenced in the Complaint. *E.g.*, *Loudermilk v. Aventis Pharm.*, No. 05-421-CV-W-GAF, 2006 WL 8438196, at *3 (W.D. Mo. June 26, 2006).

It also provides—in bold, capitalized font—that Plaintiff, as the customer, was responsible for determining the suitability of any software it licensed from DSI, expressly disclaiming any warranty to that effect by DSI and any warranty of fitness for any particular purpose:

> **CUSTOMER ASSUMES RESPONSIBILITY FOR COMPLIANCE WITH THE MINIMUM TECHNICAL REQUIREMENTS FOR HARDWARE AND SOFTWARE AND FOR <u>SELECTION OF THE LICENSED PRODUCTS TO ACHIEVE CUSTOMER'S INTENDED RESULTS. DSI MAKES NO WARRANTY AS TO THE ADEQUACY OR CAPACITY OF ANY HARDWARE OR THIRD-PARTY SOFTWARE TO ATTAIN SOME OR ALL OF THE PERFORMANCE OBJECTIVES OF CUSTOMER</u>. EXCEPT FOR THOSE WARRANTIES EXPRESSLY PROVIDED IN THIS ARTICLE VII, <u>ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTIBILITY, OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED.</u>**

*Id.*, Article VII, ¶ 5 (underline emphasis added).

The Agreement also includes an integration clause stating, "This Agreement . . . constitute[s] the complete and exclusive agreement between the parties concerning the subject matter of this Agreement and supersede[s] any prior or contemporaneous communication regarding the subject matter of this Agreement." *Id.*, Article XI, ¶ 12. Such provisions are common in business contracts – to eliminate factual disputes about communications preceding the execution of written contracts, which spell out the rights and obligations of the parties.

It shortly became clear that Plaintiff actually wanted something different from what was agreed to in Statement of Work 1, and DSI provided a second Statement of Work ("Statement of Work 2," attached as Ex. C) in early 2019. FAC, ¶ 47. Mr. DiBartolo allegedly wrote that Statement of Work 2 would provide for a "fully custom build" of applications for Deployed. *Id.*, ¶¶ 52-53. On March 7, 2019, the parties entered into Statement of Work 2. *Id.*, ¶ 54. Like the prior one, Statement of Work 2 was to be completed in phases. Ex. C, at 6-7. Statement of Work 2 also envisioned a "cooperative, hands-on project, jointly managed by DSI and [Plaintiff]," with

3

Plaintiff assuming various responsibilities to assist with project planning and coordination. Ex. C, at 9, 11-13. Like Statement of Work 1, Statement of Work 2 described a combination of both "standard" tools and "custom" work. *See id.*, at 9 ("DSI has allocated time to this Project to build the integration to/from the Customer's host system NetSuite and the Cloud Inventory software using its standard integration tool set."), 13 ("DSI will deploy the standard Cloud Inventory Solution for Asset Management"). In other words, Statement of Work 2 stated on its face that it did not provide for fully custom or "ground up" software; it would allow the parties to jointly implement a customized field inventory management system with the functions specified in that document. Ex. C. Statement of Work 2 also incorporated the terms of the Agreement, affirming again those terms of the agreement. FAC, ¶ 56.

In December 2019 and February 2020, DSI provided versions of its software for bug testing. *Id.*, ¶¶ 68-69. Plaintiff filed a Complaint on July 31, 2020, then its First Amended Complaint on September 9, 2020, alleging fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and breach of contract.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-57. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, the plaintiff must allege facts that, if true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 557, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While courts should accept all factual allegations as true, courts are not required to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 678. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency . . . should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations omitted). "Although a party may plead alternative theories, the facts alleged must plead a cause of action that is recognized under Missouri law." *Gasket Eng'g Co., Inc. v. Discover Prop. & Cas. Ins. Co.*, No. 11-1173-CV-W-HFS, 2012 WL 13027945, at *1 (W.D. Mo. Sept. 20, 2012).

Under Fed. R. Civ. P. 9(b), an even higher standard applies to fraud-based claims. A "party must state with particularity the circumstances constituting fraud including such matters as the time, place and contents of the false representations as well as the identity of the person making the misrepresentation and what was obtained or given up." *Smith v. Argent Mortg. Co.*, No. 09-0956-CV-W-HFS, 2010 WL 2301191, *2 (W.D. Mo. June 7, 2010).

## ARGUMENT

### I. Because the Alleged Misrepresentations in Plaintiff's Fraud Claims Relate to the Subject Matter of the Contracts, They Fail to State a Claim.

Because Plaintiff's inducement and misrepresentation claims relate to promises of contractual performance, they fail as a matter of law. "[T]he mere failure to perform a contract cannot serve as the basis of tort liability[.]" *State ex rel. William Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. banc 1987); *see also Bank of Kirksville v. Small*, 742 S.W.2d 127, 132 (Mo. banc. 1987) ("A mere failure of performance does not establish knowledge or intent of the speaker to defraud[.]"); *Titan Const. Co. v. Mark Twain Kansas City Bank*, 887

5

S.W.2d 454, 459 (Mo. App. W.D. 1994) ("The mere breach of a promise or failure to perform does not constitute a misrepresentation of fact . . . or create an action for fraud.").

A "fraud claim is permitted only if it arises from acts that are separate and distinct from the contract." *O'Neal v. Stifel, Nicolaus & Co., Inc.*, 996 S.W.2d 700, 702 (Mo. App. E.D. 1999). To determine whether the underlying acts are sufficiently separate and distinct, "it is necessary to determine the source of the duty claimed to have been violated, and when the duty alleged to have been breached stems from a contract, the breach does not amount to a tort." *Titan Constr. Co.*, 887 S.W.2d at 459 (citing *Hartenbach*, 742 S.W.2d at 140). Specifically, courts may look to "(1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract" and "(2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*, 74 F. Supp. 3d 1026, 1029 (W.D. Mo. 2015) (quoting *Compass Bank v. Eager Road Associates, LLC*, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013)).

How a plaintiff labels his claims "does not change" their nature. *Id.* For instance, in *Fabas Consulting*, Plaintiff alleged breach of contract as well as fraudulent and negligent misrepresentation. *Id.* This Court concluded that allegations a Defendant "provid[ed] a defective unit" were effectively the same as Plaintiff's claims that Defendant fraudulently and negligently misrepresented that the unit was "fully and properly inspected" and "fully compliant" with various requirements; therefore, the essence of the alleged misrepresentations was "contractual in nature." *Id.*; *see Compass Bank*, 922 F. Supp. 2d at 827 (dismissing fraudulent inducement claim where "Plaintiffs allege[d] that Defendants misrepresented that they would meet obligations later incorporated into the contract—*i.e.*, that Defendants made a promise to keep a promise and yet broke both (substantively identical) promises").

6

Similarly, in *AKA Distributing Corporation v. Whirlpool Corporation*, the Eighth Circuit found a fraud claim was "not independent of the contract and its performance." 137 F.3d 1083, 1087 (8th Cir. 1998) (applying Minnesota law). Although the plaintiff alleged defendant "lied when it said [plaintiff] would be a distributor for a long time," the claim failed because "duration was a term of the contract, and breach of that term was the basis for [Plaintiff's] time-barred contract claim." *Id.*

In short, Plaintiff cannot build a fraud claim on allegations about what a contract provided (or "would" provide) or about how DSI performed the contracts, because such theories are not "independent of" the contracts. As shown below, Plaintiff's claims are far from "independent of" the contracts. The only alleged misrepresentations Plaintiff relies on relate to subject matters "incorporated into" the contracts. Additionally, Plaintiff pleads no damages from the alleged fraud that are distinguishable from the damages it alleges for non-performance of the contracts. In fact, although Plaintiff pleads breach of contract "in the alternative," its misrepresentation theories all turn on entering into binding agreements and the alleged non-performance of those binding agreements. FAC, ¶ 140.

Because the contracts preclude Plaintiff's misrepresentation theories, even Plaintiff's claims against the individual defendants should be dismissed. *E.g.*, *Inspired Pharma Sols., LLC v. 5mRx LLC*, No. 4:17CV1621 SNLJ, 2018 WL 659205, at *3 (E.D. Mo. Feb. 1, 2018) (dismissing misrepresentation claim against LLC and its president based on alleged misstatements by the president); *Compass Bank*, 922 F. Supp. 2d at 828 (dismissing fraudulent inducement claim against LLC and its member-representatives).

7

### A. The Subject Matter of the Alleged Representations Was Incorporated into the Parties' Contracts.

Plaintiff pleads a textbook case of alleged misrepresentation that involves nothing beyond the subject matter of the parties' contracts. In Count I, Plaintiff alleges Mr. DiBartolo's statement that the "product and corresponding DSI services proposed by SOW-1 were suitable to and capable in meeting the unique business needs and 'wish list' of functionality features communicated by Deployed" fraudulently induced Plaintiff to enter into the first contract. (FAC, ¶ 97). But that subject matter – performance of the software delivered under the Agreement and Statement of Work 1 and DSI's accompanying services – was fully set forth in those contracts. *See* Ex. B, at 6-8 (detailing the services and deliverables of Statement of Work 1); Ex. C, at 6-8 (detailing the services and deliverables of Statement of Work 2). Not only were the deliverables clearly defined, Plaintiff agreed DSI was not making a warranty that the deliverables would meet its business needs (a responsibility Plaintiff assumed), and Plaintiff agreed the contracts displaced any prior communications on this subject matter. *See* Ex. A, Article VII, ¶ 5, Article XI, ¶ 12. In other words, Plaintiff's fraud theory amounts to no more than an accusation that Defendants "induced" it to enter into contracts by making promises about what the contract would provide. Even if those promises were not explicitly disclaimed by the contracts themselves, that theory does not state a fraud claim under Missouri law.

Similarly, in Count II, Plaintiff claims Defendants stated "the difference between SOW-1 and SOW-2 was that DSI, under SOW-2 would build a fully-customized application 'from the ground up' to meet the unique business needs and 'wish list' of Deployed." (FAC, ¶ 109). This claim suffers the same defect as Count I: what software DSI would provide was defined, in detail, in Statement of Work 2. Plaintiff signed Statement of Work 2 and like any other contracting party, especially a sophisticated business, Plaintiff is charged with knowing its contents. More

importantly, this fraud claim cannot proceed because the subject matter – how "custom" or "standard" the software provided under Statement of Work 2 would be – was incorporated into the substance of Statement of Work 2.

Plaintiff's fraudulent and negligent misrepresentation allegations in Counts III and IV simply combine the theories of Counts I and II and therefore fail for the same reasons. First, Plaintiff alleges Defendants fraudulently stated that the "*standard* product and corresponding services from DSI were all Deployed needed" to meet its needs, then that the "*custom* product was actually what Deployed needed." (FAC, ¶¶ 120, 133). Again, however, the fact that DSI was not making any promises about the suitability of the agreed-upon software was a subject matter clearly set forth in the Statements of Work themselves, both of which incorporated the Agreement. Next, Plaintiff alleges Defendants stated in connection with Statement of Work 2 that "DSI was going to build a fully *custom* product 'from the ground up' for Deployed." *Id.* These statements, too, relate entirely to the subject matter of the contracts. The Statement of Work 2 defines DSI's scope of work, and it contains no promise of a 100% "custom" or "ground up" product. *See* Ex. C.

Finally, the alleged misrepresentation that "DSI was willing and/or capable of providing Deployed with a functional asset tracking module, whether as a standard or custom product," (FAC, ¶¶ 120, 133), is nothing more than a promise to perform the contracts. All contracts involve a promise to perform, but Missouri law does not convert all contract actions into fraud actions.

Similarly, Plaintiff's conclusory allegations as to Defendants' capabilities, such as "Defendants did not have the skills, abilities, or experience to delivery [sic] a fully functional and customized asset tracking module," do not salvage its fraud claims. (FAC, ¶ 134). Plaintiff has not alleged the falsity of any representations about Defendants' "skills, abilities, or experience,"

9

pleading instead only that Defendants breached the contract! Again, a breach of contract is not a fraud. Plaintiff's misrepresentation theories should be dismissed.

While Missouri recognizes a cause of action for fraudulent inducement, Plaintiff cannot claim "inducement" arising from alleged statements about the content of the agreements. None of Plaintiff's misrepresentation theories pass this test.

### B. Plaintiff Did Not Plead Extra-contractual Damages.

The misrepresentation claims also fail because Plaintiff alleges no damages separate from its alleged contract damages. *Brands, Inc. v. Crown Valley Winery, Inc.*, No. 1:19-CV-134-SNLJ, 2020 WL 3447738, at *2 (E.D. Mo. June 24, 2020) (dismissing fraud claim where "Plaintiff's damages from the alleged 'fraud' are exactly its damages as a result of the breach of contract"); *Compass Bank*, 922 F. Supp. 2d at 828 (dismissing fraudulent inducement claim where plaintiffs failed to "adequately assert additional damages outside those recoverable in connection with their breach of contract claim"). Instead, Plaintiff freely admits its only "damages" arise from DSI's alleged non-performance of the contracts themselves.

On Count I, Plaintiff cites only the costs of service and license fees pursuant to Statement of Work 1. (FAC, ¶ 106). On Count II, Plaintiff alleges similar fees for Statement of Work 2. (*Id.* at ¶ 117). On Count III, Plaintiff again notes that it "paid substantial sums of money in service and license fees to DSI." (*Id.* at ¶ 127). Plaintiff makes an identical allegation for Count IV. (*Id.* at ¶ 137). It is no wonder, then, that Plaintiff's prayer for relief cites an identical dollar figure ($414,970) under each theory. (FAC, pp. 34). Even after two attempts at stating a claim, the only alleged damages are payments under the contracts. Because Plaintiff failed to plead any fraud damages that do not duplicate its alleged contract damages, it has failed to plead any fraud claims.

10

4827-7391-5085 v2
Case 4:20-cv-00607-HFS   Document 18   Filed 10/07/20   Page 14 of 19

## II. Plaintiff's Misrepresentation Allegations Are Precluded by the Express Terms of the Parties' Agreement.

Dismissal is also required because the Agreement contains terms expressly foreclosing Plaintiff's fraud theory. "The law is well settled that one who signs a contract is presumed to have known its contents and accepted its terms." *Warren Supply Co. v. Lyle's Plumbing, L.L.C.*, 14 S.W.3d 816, 819 (Mo. App. W.D. 2002); *see Stein v. Stein Egg & Poultry Co.*, 606 S.W.2d 203, 205 (Mo. App. 1980) ("false representations as to the legal effect of an instrument are no bar to an action thereon because a party signing such an instrument is presumed to know its contents and has no right to rely on the representations of the other party as to its legal effect"). Further, when courts review contracts, "each term is construed to avoid an effect which renders other terms meaningless," as "people are presumed not to intend nullities" that would cause "some of the provisions [to lack] function or sense." *Tuttle v. Muenks*, 21 S.W.3d 6, 12 (Mo. App. W.D. 2000). The court will give the words of a contract their "plain, ordinary, and usual meaning." *Bamber v. Prime Healthcare Kansas City - Physician's Servs., LLC*, No. 17-CV-00229-W-HFS, 2018 WL 6582383, at *3 (W.D. Mo. Dec. 12, 2018).

Among other things, fraudulent misrepresentation requires reasonable reliance on a false, material statement and damages proximately caused by it. *Ziglin v. Players MH, L.P.*, 36 S.W.3d 786, 791 (Mo. App. 2001). Similarly, negligent misrepresentation includes an element of justifiable reliance. *See Mark Twain Kansas City Bank v. Jackson, Brouillette, Pohl & Kirley, P.C.*, 912 S.W.2d 536, 540 (Mo. App. 1995). Reliance on alleged statements that are plainly contradicted by the terms of a written contract, however, is *per se* unreasonable. *See Englert v. Alibaba.com Hong Kong Ltd.*, No. 4:11CV1560 RWS, 2012 WL 1468472, at *3 (E.D. Mo. Apr. 27, 2012) (dismissing fraud and negligent misrepresentation claims where alleged misrepresentations were contrary to the plain language of the agreement, which also included a warranty waiver); *Villines*

11

*v. Gen. Motors Corp.*, 324 F.3d 948, 953 (8th Cir. 2003) (finding reliance on purported misrepresentations that contradicted employment agreements unjustified under Kansas law); *Crowell v. Campbell Soup Co.*, 264 F.3d 756, 762 (8th Cir. 2001) (holding reliance on alleged promises that contradicted written agreements unreasonable as a matter of Minnesota law).

As a result, many courts have dismissed misrepresentation claims – even fraudulent inducement – premised upon an alleged promise that is inconsistent with the signed contract. *E.g.*, *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1343 (S.D. Fla. 2010) (dismissing claim alleging pre-contract fraud as to the identity of a developer where a developer was expressly named in the contract); *Ebert v. Wells Fargo Bank, N.A.*, No. A-13-CV-638 LY, 2014 WL 12478011, at *5 (W.D. Tex. Mar. 25, 2014), *report and recommendation adopted sub nom. Ebert v. Wells Fargo Mortg., N.A.*, No. A-13-CV-638-LY, 2014 WL 12479279 (W.D. Tex. May 12, 2014) (dismissing claims of fraud and fraudulent inducement that contradicted plain terms of deed of trust); *Villalobos v. Atlanta Motorsports Sales, LLC*, 844 S.E.2d 212, 219 (Ga. App. 2020) (affirming judgment on the pleadings where alleged misrepresentations were contradicted by contract with merger clause and warranty exclusions); *Liberty Mut. Ins. Co. v. Harvey Gerstman Assocs., Inc.*, No. CV 11-4825 SJF ETB, 2012 WL 5289606, at *11 (E.D.N.Y. Sept. 13, 2012), *report and recommendation adopted*, No. CV-11-4825 SJF ETB, 2012 WL 5289587 (E.D.N.Y. Oct. 24, 2012) (dismissing fraudulent inducement claim that was directly contradicted by terms of later written agreement); *HSBC Realty Credit Corp. (USA) v. O'Neill*, 745 F.3d 564, 574 (1st Cir. 2014) (affirming judgment on the pleadings where fraudulent inducement claim was contradicted by parties' agreement).

This rule presents a wholly independent reason Plaintiff cannot base a fraud claim on alleged statements about what software was best for its business needs. The Agreement includes a

12

bold, capitalized provision making clear that Plaintiff, as the customer, agreed to accept responsibility for the suitability of any software it selected and purchased. Article VII, ¶ 5. Going even further, the Agreement "constitute[s] the complete and exclusive agreement between the parties concerning the subject matter of this Agreement and supersede[s] any prior or contemporaneous communication regarding the subject matter of this Agreement." Ex. A, Article XI, ¶ 12. Integration clauses exist to prevent disputes precisely like this one. Plaintiff cannot plead that some statement made before the execution of each contract induced Plaintiff to enter into it, because both Statements of Work incorporate the provisions of the Agreement. And, as explained above, this is not a valid "inducement" claim because the only alleged misrepresentations are statements about what the agreements would provide. That is insufficient as a matter of law.

Plaintiff's misrepresentation claim based on the statement that "DSI was going to build a fully *custom* product 'from the ground up' for Deployed" under Statement of Work 2 (FAC, ¶¶ 120, 133) is equally precluded by express contract language. The product described in Statement of Work 2 is a combination of both "standard" solutions and custom-configured work. *See* Ex. C, at 9 ("DSI has allocated time to this Project to build the integration to/from the Customer's host system NetSuite and the Cloud Inventory software using its standard integration tool set."), 13 ("DSI will deploy the standard Cloud Inventory Solution for Asset Management"). As set out in Statement of Work 2, DSI would incorporate some standard tools to deploy Plaintiff's product in phases, requiring Plaintiff's cooperation and joint management along the way. *See id.*, at 9, 11-13. Because the plain language of the parties' contracts contradicts Plaintiff's claims of fraudulent misrepresentation, Count III should be dismissed.

13

4827-7391-5085 v2
Case 4:20-cv-00607-HFS   Document 18   Filed 10/07/20   Page 17 of 19

## CONCLUSION

Plaintiff's First Amended Complaint fails to meet the requirements of Missouri law or the contracts between the parties. For the second time in this lawsuit's short history, Plaintiff purports to bring multiple tort claims that are foreclosed by contracts because they all allege failure to perform a contractual duty or a promise not independent of the contracts, and because the contracts expressly disclaim the alleged misrepresentations pleaded.

Plaintiff's First Amended Complaint comes after Defendants' first motion to dismiss. Even as amended, the claims fail. Now that Plaintiff has illustrated the futility of further amendments, Defendants respectfully request that the Court dismiss Plaintiff's tort claims with prejudice.

Respectfully submitted,

*/s/ Zach Chaffee-McClure*
SHOOK, HARDY & BACON L.L.P.
Zach Chaffee-McClure, #60099
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
zmcclure@shb.com
***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document on October 7, 2020, using the Court's CM/ECF filing system, thereby sending notice of the filing to all counsel of record for this matter, including the following:

Arthur Chaykin (Mo. Bar. No. 42110)
Jeffrey T. Donoho (Mo. Bar. No. 62852)
2000 Shawnee Mission Parkway, Suite 210
Mission Woods, KS 66205

Telephone: (816) 527-9447
Facsimile:  (855) 844-2914
arthur@kennyhertzperry.com
jeff.donoho@kennyhertzperry.com
***Attorneys for Plaintiff Deployed Resources, LLC***

                                                  */s/ Zach Chaffee-McClure*
                                                  ***Attorney for Defendants***